## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICK EDWARD CAMASTA,** | ) | |
| **individually and as the representative of a** | ) | |
| **class of similarly situated persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 12-cv-08285** |
| **v.** | ) | |
| | ) | **Honorable Joan H. Lefkow** |
| **OMAHA STEAKS INTERNATIONAL, INC.,** | ) | |
| **d/b/a/ OMAHA STEAKS, and** | ) | |
| **OS SALESCO, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Patrick Camasta,[1] individually and as a representative of a class of similarly

situated persons, filed suit against defendants Omaha Steaks International Inc. ("OSI, Inc.") and

OS SalesCo, Inc. ("OS Sales") alleging that defendants violated the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*., and the Illinois

Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq*.[2]  Before

the court is defendant OSI Inc.'s motion to dismiss for lack of personal jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(2) and defendants' motion to dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons stated below, OSI, Inc.'s motion

[#6] is denied without prejudice and defendants' motion [#9] is granted in part and denied in

part.

---

[1] Defendants question whether there is an existing person named Patrick Edward Camasta as identified in the caption of the complaint.  They have submitted the declaration of James Kirby, a private investigator, setting forth his futile efforts to locate such a person.  Defendants do not dispute that Patrick N. Camasta is an existing person, however, and note that he has been involved in various other lawsuits filed by the same plaintiff's counsel.  Camasta is instructed to correct the name used in the caption of the complaint.

[2] The court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441, and venue is proper pursuant to 28 U.S.C. §§ 1441(a) and 1446(a).

## BACKGROUND

Camasta is an Illinois consumer who, on July 28, 2012, purchased Omaha Steaks filet mignons at defendants' retail store #134 in Vernon Hills, Illinois.  Compl. ¶ 12.  Camasta alleges that he saw advertisements of "sale prices" and was induced to buy the steaks because he believed them to be temporarily on sale.  *Id.* ¶¶ 13–14.  Camasta's receipt indicates that he received a discount of 35% off the regular retail price.  *Id.* ¶ 13 & Ex. A.  Camasta's receipt also states that "[i]f you are not absolutely thrilled with your purchase from Omaha Steaks Stores for any reason at all, we'll cheerfully replace your purchase or refund your money, whichever you prefer."  *Id.* Ex. A.

Camasta alleges that the purchase price of the filet mignons was not actually reduced but is instead representative of defendants' pattern and practice of advertising the normal retail price as a temporary price reduction.  *Id.* ¶ 16.  Camasta alleges that he would not have bought the steaks "[b]ut for the advertised and promoted sales price."  *Id.* ¶ 15.  He further alleges that had he not been misled that the sale price was actually the normal retail price, he "could have purchased [the steaks] for less than the amount paid, or could have gone to another retail store for a true 'sale' price of a comparable item."  *Id.* ¶ 32, 44.  Camasta claims that defendants' advertisement of the normal retail price as a temporary price reduction is a misleading and fraudulent sales technique, citing to various other similar examples of alleged Omaha Steaks advertisements.  *Id.* ¶¶ 18, 20.  He also contends that the sales technique is pursued "through carefully coordinated print, television, direct mail and in store displays" and perpetrated on hundreds or thousands of Illinois consumers.  *Id.* ¶¶ 19, 22.

OSI, Inc. is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  Declaration of David Hershiser ("Hershiser Decl.") ¶ 2.  OSI, Inc. owns the "Omaha

Steaks" trademark.  Dkt. 17-1.  OSI, Inc. is not licensed to do business in Illinois and does not maintain offices or have a registered agent located in Illinois.  Hershiser Decl. ¶¶ 7, 13.

OS Sales is a Delaware corporation with its principal place of business in Omaha, Nebraska.  *Id.* ¶ 2.  OSI, Inc. and OS Sales are separate corporations affiliated through common ownership.  *Id.*  OS Sales maintains its own respective business operations, including separate accounts payable and receivables, separate tax filings, and separate leases and contracts.  *Id.* ¶ 5. OS Sales does not communicate or confer with OSI, Inc. regarding OS Sales's pricing scheme, advertising or marketing campaigns.  *Id.* ¶ 6.

## ANALYSIS

### I.    Personal Jurisdiction over OSI, Inc.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges whether the court has jurisdiction over a party.  The party asserting jurisdiction has the burden of proof in establishing that the court should have jurisdiction over the challenging party.  *See Tamburo* v. *Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).  The court may review affidavits submitted by the parties when considering dismissing a case for lack of personal jurisdiction.  *Purdue Research Found.* v. *Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

If the court rules on a motion without a hearing, the plaintiff need only establish a "prima facie case of personal jurisdiction."  *Id.* at 782 (quoting *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).  The court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff.  *Central States, Se. & Sw. Areas Pension Fund* v. *Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor* v. *Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)).  Any dispute concerning relevant facts is resolved in favor of the plaintiff.  *Purdue*, 338 F.3d at 782 (citing *Nelson* v. *Park Indus.*,

717 F.2d 1120, 1123 (7th Cir. 1983)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783; *see generally* 4 Charles Alan Wright et al., Federal Practice and Procedure Civil § 1067.6 (3d ed.).

In diversity cases, a federal court has personal jurisdiction over a foreign defendant "'only if a court of the state in which [the district court] sits would have such jurisdiction.'" *Klump* v. *Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (quoting *Wilson* v. *Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990)). Illinois's long-arm statute allows its courts to exercise personal jurisdiction to the full extent allowed by the United States Constitution. *Id.* (citing 735 Ill. Comp. Stat. 5/2–209(c)). In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin* v. *Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1984).

Personal jurisdiction comes in two forms: general and specific. Courts have general jurisdiction when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence," *Tamburo*, 601 F.3d at

701, so "the defendant could reasonably foresee being haled into court there on *any* matter." *Int'l Med. Grp., Inc.* v. *Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 847 (7th Cir. 2002). For this reason, a defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, --- U.S. ----, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011); *Purdue*, 338 F.3d at 787. Alternatively, the court has specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted). In either case, "each defendant's contacts with the forum State must be assessed individually." *Calder* v. *Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

According to the declaration submitted by David Hershiser, Vice President and Chief Financial Officer of OSI, Inc. and OS Sales, OSI, Inc. does not do business in Illinois, does not have offices in Illinois, does not solicit business in Illinois, and does not have control over any advertising or marketing carried out by OS Sales, a corporate affiliate, in the state of Illinois. Hershiser Decl. ¶¶ 3–7, 12. Camasta argues in response, however, that OSI, Inc. is subject to jurisdiction here because it has opened six stores in Illinois through its retail division, OS Sales, uses its trademark to advertise its products, and maintains an interactive website to sell its products to Illinois consumers. Alternatively, Camasta requests jurisdictional discovery to determine whether OSI, Inc. financially benefits from its products being sold in Illinois or the use of its trademark in Illinois.

### A. OSI, Inc.'s Corporate Affiliation with OS Sales

Camasta argues that jurisdiction over OSI, Inc. exists because OSI, Inc. does business in Illinois through its corporate affiliate, OS Sales. "[C]orporate ownership alone is not sufficient for personal jurisdiction." *Cent. States, Se.*, 230 F.3d at 943. In order for this court to have jurisdiction over OSI, Inc. based on its affiliation with OS Sales, Camasta must rely on an exception to the general rule that the contacts of one corporation are not imputed to a corporate affiliate for jurisdictional purposes, such as where a parent company exerts actual control over a subsidiary or there are grounds for piercing the corporate veil.[3] *Id.* at 940, 943–44; *see also Abelesz* v. *OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) ("Imputation, however, requires an unusually high degree of control or that the subsidiary's corporate existence is simply a formality." (citations omitted) (internal quotation marks omitted); *Purdue*, 338 F.3d at 788 n.17. It is not enough that OSI, Inc. control, direct, and supervise OS Sales to some extent. *See Alderson* v. *Southern Co.*, 747 N.E.2d 926, 945, 321 Ill. App. 3d 832, 254 Ill. Dec. 514 (2001) ("Parents of wholly-owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent. If, however, the subsidiary is conducting its own business, then an Illinois court may not assert *in personam* jurisdiction over the parent simply because it is the parent."). The court instead considers such factors as (1) the degree of control exercised by OSI, Inc. over OS Sales, (2) the obligations of OS Sales to service OSI, Inc.'s products, (3) inclusion of OS Sales's name and address in OSI, Inc.'s advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) the location of OS Sales's board of directors meetings, and (7)

---

[3] To pierce the corporate veil, Illinois courts require a showing that the subsidiary "is so controlled, and its affairs so conducted by a parent that observance of the fiction of separate identities would sanction a fraud or promote injustice." *Old Orchard Urban Ltd. P'ship* v. *Harry Rosen, Inc.*, 904 N.E.2d 1050, 1061, 389 Ill. App. 3d 58, 328 Ill. Dec. 540 (2009). Camasta has not made any showing of fraud or injustice here, and therefore the court will only consider whether OSI, Inc. exerts actual control over OS Sales.

whether OS Sales is authorized to prosecute trademark infringement suits in OSI, Inc.'s name. *Palen* v. *Daewoo Motor Co.*, 832 N.E.2d 173, 184, 358 Ill. App. 3d 649, 295 Ill. Dec. 22 (2005) (citing *Wissmiller* v. *Lincoln Trail Motorsports, Inc.*, 552 N.E.2d 295, 195 Ill. App. 3d 399, 141 Ill. Dec. 927 (1990)).

Camasta does not argue that OSI, Inc. exerts actual control over OS Sales or even that OSI, Inc. and OS Sales have a parent-subsidiary relationship. Rather, Camasta contends that it is unclear how interwoven the two parties are, citing to various Omaha Steaks webpages and corporate filings of the two parties. OSI, Inc. acknowledges that it and OS Sales share common ownership, but this alone is not sufficient to impute OS Sales's contacts to that of OSI, Inc. *See Cent. States, Se.*, 230 F.3d at 943 ("[W]e hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."); *Convergence Aviation, Ltd.* v. *United Techs. Corp.*, No. 10 c 2021, 2012 WL 698391, at *5 (N.D. Ill. Feb. 29, 2012) ("intertwined relationships" of executives and officers between parent and subsidiaries were, "on their own, insufficient to show substantial control"); *Bray* v. *Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06 C 50197, 2007 WL 7366260, at *8 (N.D. Ill. Aug. 30, 2007) ("Despite the overlap of directors, plaintiffs have not shown that such an unusually high degree of control exists in this case.").

Nor do the webpages Camasta relies on support a finding that OSI, Inc. exerts control over OS Sales. To the contrary, they reflect that OSI, Inc. and OS Sales are separate companies that all use "Omaha Steaks" as shorthand in their operations. *See, e.g.*, Dkt. 17-3 (separating out the Omaha Steaks businesses, indicating that OSI, Inc. is responsible for production while OS Sales is responsible for the consumer direct, incentive business, retail, and food service

business). This does not contradict Hershiser's declaration that OSI, Inc. and OS Sales are independently operated, albeit through common ownership. At this stage, without additional evidence showing an unusually high degree of control, Camasta cannot impute OS Sales's Illinois contacts to OSI, Inc.

### B. Use of the "Omaha Steaks" Trademark in Illinois

Camasta also argues that this court has jurisdiction over OSI, Inc. because OSI, Inc. allows its "Omaha Steaks" trademark to be used in advertising, marketing, and product packaging present in Illinois. But "[t]he mere existence of a licensor-licensee relationship, without more, is 'insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction.'" *Eco Pro Painting, LLC* v. *Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736–37 (N.D. Ill. 2011) (quoting *Sinclair* v. *StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 n.8 (E.D. La. 2010)). Only where the licensor exercises control over the licensee's sales activities and regulates its operations will jurisdiction be conferred on the licensor. *See id.*; *Meta/Balance, Inc.* v. *Health Ventures Partners*, No. 03 C 50497, 2004 WL 1345097, at *2 (N.D. Ill. June 14, 2004) (jurisdiction not conferred on licensor where it "retained little or no control over how [the mark] was used" and did not have the ability to regulate the licensee's operations or sales activities). Although there is no doubt that the "Omaha Steaks" trademark is widely used in Illinois, Camasta has not set forth a basis for finding that OSI, Inc. exerts control over OS Sales's use of the trademark in Illinois. In fact, the only evidence before the court on this point is to the contrary, that OSI, Inc. "does not communicate or confer with OS Sales regarding . . . its advertising and marketing campaigns in Illinois or elsewhere" or in any other way "direct or control any business conducted by OS Sales." Hershiser Decl. ¶¶ 4, 6. The

evidence falls short of establishing personal jurisdiction in Illinois over OSI, Inc. based on its status as a licensor of the "Omaha Steaks" trademark.

### C. Interactivity of the Omaha Steaks Website

Lastly, Camasta argues that the court has jurisdiction over OSI, Inc. if for no other reason than its maintenance of an active and interactive website to sell its products to consumers in Illinois and inclusion of this web address on brochures and advertisements issued in Illinois. For support, Camasta submits printouts from www.omahasteaks.com providing opportunities to buy Omaha Steaks products online and for employment in Illinois and nationwide.

OSI, Inc. asserts that the printouts offered by Camasta are unauthenticated and therefore should not be considered by the court pursuant to Federal Rule of Evidence 901(a). Federal Rule of Evidence 901(a) provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is" for it to properly be considered by the court. Here, despite arguing that Camasta has not technically complied with the authentication requirements, OSI, Inc. does not contend that the exhibits do not accurately represent the contents of the website on the day the printouts were made. *See Baxter* v. *Intelius, Inc.*, SACV09-1031 AG MLGX, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) (taking judicial notice of screenshot provided by defendant where plaintiffs did not dispute its accuracy); *cf. Van Tassell* v. *United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 780 (N.D. Ill. 2001) (refusing to take judicial notice of screenshots the accuracy and authenticity of which were specifically disputed by the other party). Nor can OSI, Inc. claim surprise, for it had the opportunity to rebut any arguments Camasta made based on these printouts in its reply brief. *Cf. Pickett* v. *Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("[G]iven that the Internet contains an unlimited supply of information with varying degrees of reliability, permanence, and

accessibility, it is especially important for parties to have the opportunity to be heard prior to the taking of judicial notice of websites."). Thus, the court will consider Camasta's argument on its merits.

The website printouts refer generally to "Omaha Steaks." But the overview of the business page separates out the different affiliated companies and their roles, indicating that online marketing is the realm of OmahaSteaks.com, Inc. The webpages are also copyrighted by Omahasteaks.com, Inc. The website pages presented to the court do not suggest that OSI, Inc. is promoting online orders to Illinois citizens or hiring employees in Illinois. Thus, the court cannot find personal jurisdiction over OSI, Inc. based on the Omaha Steaks website at this time.

### D.     Camasta's Request for Jurisdictional Discovery

Although Camasta has not shown that OSI, Inc. is subject to personal jurisdiction based on the facts before the court at this time, it has also requested the opportunity to take limited discovery on the personal jurisdiction issue. Camasta argues that there are certain open questions that could affect jurisdiction, including the way in which OSI, Inc. is compensated for any sales in Illinois, the interrelationship between OSI, Inc. and OS Sales, and the extent to which OSI, Inc. controls use of the Omaha Steaks trademark. It would have been preferable for Camasta to seek jurisdictional discovery prior to filing a response to OSI, Inc.'s motion, so that the court could have the benefit of that discovery in deciding this motion. Nonetheless, because Camasta has shown that there are legitimate questions surrounding personal jurisdiction over OSI, Inc., OSI, Inc.'s motion to dismiss for lack of personal jurisdiction will be denied without prejudice. *See Trading Techs. Int'l, Inc.* v. *BCG Partners, Inc.*, No. 10 C 715, 2011 WL 1220013, at *3 (N.D. Ill. Mar. 28, 2011) (jurisdictional discovery justified where plaintiff shows that factual record is ambiguous or unclear).

## II.    Ripeness or Mootness

Defendants argue that Camasta's claims are both moot and not ripe and therefore should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Under Article III of the United States Constitution, federal courts have jurisdiction over live cases and controversies.  A case becomes moot, however, "when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein* v. *City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).  "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."  *Rand* v. *Monsanto*, 926 F.2d 596, 598 (7th Cir. 1991) (citation omitted).

Ripeness "is a doctrine of justiciability 'invoked to determine whether a dispute has matured to a point that warrants decision.'"[4]  *Giger* v. *Ahmann,* No. 09 CV 4060, 2010 WL 2491025, at *3 (N.D. Ill. June 15, 2010) (quoting 13B Charles Alan Wright et al., Federal Practice & Procedure: Civil § 2532 (3d ed.2008)).  "Inquiries into ripeness generally address two factors: first, whether the relevant issues are sufficiently focused so as to permit judicial resolution without further factual development; and, second, whether the parties would suffer any hardship by the postponement of judicial action."  *Triple G Landfills, Inc.* v. *Bd. of Comm'rs of Fountain Cnty., Ind.*, 977 F.2d 287, 288–89 (7th Cir. 1992).

---

[4] Some authority suggests that ripeness is a jurisdictional issue that should be addressed under Rule 12(b)(1).  *See* 15–101 James Wm. Moore et al., Moore's Fed. Practice: Civil § 101.73; *LaSalle Bank* v. *City of Oakbrook Terrace*, No. 05 C 3191, 2006 WL 59497, at *1 n. 2 (N.D. Ill. Jan. 9, 2006); *Union Tank Car Co.* v. *Aerojet-General Corp.*, No. 05 C 2095, 2005 WL 2405802, at *2 (N.D. Ill. Sept. 27, 2005).  The Seventh Circuit, however, has made clear that ripeness concerns the "appropriate exercise of discretion rather than the limits of judicial power" and that a suit should be dismissed on ripeness ground in the exercise of the court's discretion rather than for lack of jurisdiction.  *Brandt* v. *Vill. of Winnetka*, 612 F.3d 647, 649–51 (7th Cir. 2010); *see also Meridian Sec. Ins. Co.* v. *Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) ("[R]ipeness is peculiarly a question of timing rather than a limit on subject-matter jurisdiction." (citation omitted) (internal quotation marks omitted)).

Defendants argue that the court should not adjudicate Camasta's claims because Camasta could take advantage of the money back guarantee printed on his receipt if he was dissatisfied with his purchase. Because of defendants' refund policy, defendants contend that Camasta must first request a refund and only then if he does not receive the refund can he pursue his claims. But defendants cite to no law to support that Camasta must first seek a refund before being able to pursue a claim for deceptive practices. There are cases where claims for breach of warranty or breach of contract have been premised on finding that a request for repair or refund is a precondition to suit. *See, e.g.*, *Wiegel* v. *Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 943–44 (N.D. Ill. 2012) (plaintiff did not have standing for breach of refund policy where plaintiff did not seek refund and did not allege that she was misled into believing she could not obtain a refund); *Mydlach* v. *DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1059, 226 Ill. 2d 307, 314 Ill. Dec. 760 (2007) (breach of warranty claim under Magnuson-Moss Act does not accrue until defendant refuses or fails to repair product). But "the existence of a money-back guarantee is insufficient reason as a matter of law to preclude a monetary remedy" in cases alleging deceptive practices. *F.T.C.* v. *Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994). A defendant engaging in deceptive or unfair practices should not be allowed to hide behind a refund policy. *See Montgomery Ward & Co.* v. *F.T.C.*, 379 F.2d 666 (7th Cir. 1967) ("Wards also cannot rely, as it attempts to do, upon a general company money back guarantee policy. . . . [S]uch a defense . . . would make the false advertising prohibitions of the [FTC] Act a nullity. Anything might then be advertised as long as unsatisfied customers were returned their money."); *Pantron I Corp.*, 33 F.3d at 1103 ("Because even many unsatisfied customers will not take advantage of a money-back guarantee, a company which has engaged in consumer fraud would be able to retain a significant portion of the proceeds simply by making a largely illusory money-back offer.").

12

This would not further the purposes of ICFA or the UDTPA.  *See Chicago's Pizza, Inc.* v. *Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 995, 384 Ill. App. 3d 849, 323 Ill. Dec. 507 (2008) ("The purpose of the Deceptive Trade Practices Act is to prohibit unfair competition[.]"); *People ex rel. Hartigan* v. *Lann*, 587 N.E.2d 521, 524, 225 Ill. App. 3d 236, 167 Ill. Dec. 252 (1992) ("[T]he intent of the Consumer Fraud Act is to curb fraudulent abuses and to provide a remedy to persons thereby injured.").  Thus, the court declines to dismiss Camasta's claims on ripeness grounds.

Alternatively, defendants' argument can be construed as one that Camasta's claims are moot because defendants have offered him a refund of the purchase price.  Where the defendant "offers to satisfy the plaintiff's entire demand," a plaintiff may lose "personal interest" in the suit because "there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because [the plaintiff] has no remaining stake."  *Holstein,* 29 F.3d at 1147 (citation omitted) (internal quotation marks omitted).  But the offer must be for complete relief.  *See Greisz* v. *Household Bank (Ill.),* 176 F.3d 1012, 1015 (7th Cir. 1999) ("[O]bviously the rejection of an offer of less than the complete relief sought does not prove that there is no dispute between the litigants.").  Camasta argues that, despite the offer of a full refund for any reason at all, his claims are not moot because he is seeking damages "above and beyond the purchase price."  Dkt. No. 18 at 7.  Camasta's prayer for relief includes a request for statutory damages, punitive damages, attorney's fees and costs, and injunctive relief.[5] Camasta's request for relief would not be satisfied by a refund of the purchase price.  *See*

[5] ICFA does not include a statutory damages provision.  *See Taylor* v. *Halsted Fin. Servs., LLC*, No. 99 C 2466, 2000 WL 33201925, at *9 (N.D. Ill. Jan. 13, 2000).  ICFA does allow for injunctive relief and also authorizes recovery of attorney's fees and costs.  815 Ill. Comp. Stat. 505/10a(c).  The UDTPA does not support claims for actual or punitive damages and whether it would support a claim for injunctive relief in this case has not been raised by defendants.  *See Camasta* v. *Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 474509, at *5 (N.D. Ill. Feb. 7, 2013).

*Gates* v. *Towery,* 430 F.3d 429, 431–42 (7th Cir. 2005) (tender of money seized by police did not moot claims where it did not include complete relief sought, including filing fees and other costs); *Spivak* v. *Willis of Illinois, Inc.*, No. 12 C 1115, 2012 WL 1719841, at *2–3 (N.D. Ill. May 15, 2012) (settlement offer that included no provision for punitive damages where punitive damages were authorized under ICFA did not moot case); *Van Tassell*, 795 F. Supp. 2d at 777 (offer to return subscription fees did not moot claims where plaintiff also sought lost interest from wrongful charges, statutory damages, costs, and reasonable attorney's fees).   Thus, Camasta's claims are not moot.

### III.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted.   Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).   In ruling on a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff.   *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002).   To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face.   *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009); *see Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007).   The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly,* 550 U.S. at 555.   At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010).   Rather, it is the facts that count.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the pleading threshold under Rule 9(b), Camasta must "state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Stated differently, the complaint must include "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### A.      Applicability of Rule 9(b) to Camasta's Claims

Defendants argue that Camasta has failed to sufficiently plead facts to support his ICFA and UDTPA claims. Under ICFA, Camasta must plead "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel* v. *Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)). Camasta must also allege actual damage. *Kim* v. *Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing 815 ILCS 505/10a). Recovery may be obtained for unfair *and* deceptive conduct, and thus Camasta may proceed under either theory. *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002). The UDTPA codifies Illinois common law of unfair competition. *Schwebe* v. *AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *3 (N.D. Ill. May 16, 2013). To state a claim for violation of the UDTPA, Camasta must allege that defendants made a representation that was false, misleading, or deceptive. *See Lynch Ford, Inc.* v. *Ford Motor Co., Inc.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997).

Defendants argue that Rule 9(b) applies to Camasta's claims.  Camasta responds that Rule 9(b) does not apply "[b]ecause neither fraud nor mistake is an element of unfair conduct under the ICFA."  Dkt. No. 18 at 3; *see Pirelli,* 631 F.3d at 446 ("The argument is that the more forgiving pleading standards should apply because [plaintiff] is entitled to recover under the ICFA's bar on unfair practices that fall short of deception.  When a claim alleges an unfair practice, the relaxed pleading standards of Rule 8 do indeed govern." (citations omitted)).  Camasta alleges fraudulent conduct in his complaint but then phrases defendants' conduct as an unfair practice.  *See* Compl. ¶ 20 (describing sales practice as "a misleading and fraudulent sales technique"); *id.* ¶ 29 ("Defendants' pattern and practice of advertising the normal retail price as a temporary price reduction is an unfair practice . . . .").  Because Camasta's claims of unfairness sound in fraud, Rule 9(b) applies.  *Pirelli*, 631 F.3d at 446–47 ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."); *Camasta* v. *Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013) (finding similar claims made by the same plaintiff must meet Rule 9(b)); *Telefonix, Inc.* v. *Response Eng'g, Inc.*, No. 12 C 4362, 2012 WL 5499437, at *3 (N.D. Ill. Nov.13, 2012) ("Rule 9(b)'s standard can apply to counts based on fraudulent conduct, not just counts of fraud."); *Pirelli Armstrong Tire Corp.* v. *Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *7 (N.D. Ill. Feb. 18, 2010) ("[I]f adding an allegation of 'unfairness' to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and would be subject to the less stringent standard."), *aff'd*, 631 F.3d 436 (7th Cir. 2011).  Similarly, Camasta's UDTPA claim must also meet Rule 9(b).

### B.     Deception, Unfairness, and Reliance

Defendants argue that Camasta has failed to plead facts to support deception, unfairness, or reliance, relying on *Tudor* v. *Jewel Food Stores, Inc.*, 681 N.E.2d 6, 288 Ill. App. 3d 207, 224 Ill. Dec. 24 (1997). In *Tudor*, the plaintiff alleged an ICFA violation based on being overcharged for groceries she bought that had been advertised at a lower price. *Id.* at 8. She acknowledged in her complaint that the defendant's electronic scanners had a 96% accuracy rate. *Id.* She additionally alleged that she received a receipt that allowed her to determine whether the scanned prices were accurate and that defendant had a money back guarantee policy if the scanned price was different from the shelf price. *Id.* The court found that plaintiff's allegations demonstrated that there was no deception, based on the combination of the scanners' high accuracy rate and the money back guarantee. *Id.* The court also concluded that plaintiff could not make a claim for unfair conduct, for plaintiff had "not adequately pleaded that she had no alternative but to pay the incorrectly scanned prices." *Id.* Finally, the court found that "the combination of the issuance of the receipt, along with the money-back guarantee if the scanned price differs from the shelf price, indicates defendant did not intend that plaintiff rely on an incorrectly scanned price." *Id.* at 8–9. The court did not, however, decide that the money back guarantee on its own rendered defendant's conduct not deceptive. *See id.* at 10 ("The money-back guarantee offered by defendant simply is one factor showing that defendant did not defraud plaintiff or intend that plaintiff rely on any deception.").

Defendants argue that Camasta's claims of deception are unfounded because he was able to determine defendants' pricing practices from public sources and defendants offer him a full refund. Unlike in *Tudor*, however, where the money back guarantee specifically highlighted the overpayment at issue and the plaintiff admitted that charges were 96% accurate, here Camasta's

allegations do not foreclose a finding that defendants' advertising practices were deceptive. The argument that a money back guarantee essentially makes any alleged falsity in advertising irrelevant because it is harmless "has been repeatedly rejected." *F.T.C.* v. *Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir. 2002) (citing *Montgomery Ward & Co.*, 379 F.2d at 671; *Pantron I Corp.*, 33 F.3d at 1103; and *F.T.C.* v. *SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1273 (S.D. Fla. 1999)). Moreover, Camasta's allegation that he learned of defendants' alleged deceptive practice after the purchase of the steaks does not compel dismissal at this stage. Although defendants may ultimately prevail in demonstrating that their conduct was not deceptive, Camasta has sufficiently alleged that it is.

Camasta may also pursue an ICFA violation for unfair conduct by alleging that defendants' conduct was unfair by pleading that the practice offends public policy, is so oppressive that the consumer has little alternative but to submit, or substantially injured the consumer. *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002); *Tudor*, 681 N.E.2d at 8. The court agrees that Camasta cannot argue that defendants' conduct was so oppressive, thus making it unfair, because he cannot allege that he had no alternative but to buy the steaks at issue. *See Tudor*, 681 N.E.2d at 8; *Kremers* v. *Coca-Cola Co.*, 712 F. Supp. 2d 759, 772–73 & n.8 (S.D. Ill. 2010) (conduct was not so oppressive where plaintiff conceded that no one was forcing her or anyone else to buy product at issue). But because Camasta has alleged that defendants' actions violated public policy and cause substantial injury to consumers, he has sufficiently alleged unfair conduct.

Defendants also challenge whether Camasta has adequately alleged that they intended for Camasta to rely on their advertisement. Relying on *Tudor*, they argue that the combination of the publicly available data indicating that products are frequently on sale and the money back

guarantee demonstrates that they did not intend for Camasta to rely on the stated discounts. But again, this case is distinguishable from *Tudor*, for the money back guarantee was not specifically targeted at correcting overcharges based on scanner error nor could Camasta determine what the normal retail price is by comparing his receipt to defendants' various advertisements. Instead, it is reasonable to conclude from the complaint that defendants pursued the alleged deceptive advertising with the intent of inducing consumers to purchase their products.

### D.  Proximate Causation and Actual Damages

Defendants also argue that Camasta has not adequately alleged proximate causation or actual damages. Defendants' argument on proximate causation is undeveloped. It also fails to acknowledge Camasta's allegations that, "after seeing advertisements of 'sale prices', [he] purchased filet mignons" from defendants and that "[b]ut for the advertised and promoted sales price Plaintiff would not have bought the steaks." Compl. ¶¶ 13, 15. Camasta also alleges that he was deceived, for he later learned that the sales price was not actually a "temporary price reduction." *Id.* ¶¶ 14, 16. This is sufficient at this stage to allege proximate cause.

Defendants have a better argument with respect to actual damages. Actual damage requires the plaintiff to allege "actual pecuniary loss." *Mulligan* v. *QVC, Inc.*, 888 N.E.2d 1190, 1197, 382 Ill. App. 3d 620, 321 Ill. Dec. 257 (2008). In a case like that here, that means Camasta must allege that he was deprived of the "benefit of the bargain" because he "paid more than the actual value of the property." *Id.* at 1197–98.

Defendants rely heavily on *Kim* to argue that Camasta's allegations fall short of alleging actual damage. In *Kim*, the plaintiffs purchased children's clothing from Carter's retail outlets for a discount off the listed suggested price. 598 F.3d at 363. The plaintiffs argued that the "suggested prices" convinced customers that the items were being sold at a significant discount

19

but that, in reality, the "suggested prices" were "fictitious" and "substantially higher" than what the products sold for on a regular basis. *Id.* The Seventh Circuit agreed that the district court had properly dismissed the plaintiffs' ICFA claim, for the allegations did not establish actual damages. *Id.* at 366. The plaintiffs had not alleged that the clothing they bought "was defective or worth less than what they actually paid." *Id.* at 365. They also had not alleged that "but for Carter's deception, they could have shopped around and obtained a better price in the marketplace." *Id.* Nor was it enough for the plaintiffs to allege that "Carter's price comparisons deceived the plaintiffs and induced them to buy Carter's clothing." *Id.* at 366. Instead, the court concluded that the allegations established that the plaintiffs received "the benefit of their bargain and suffered no actual pecuniary harm." *Id.*

Defendants argue that Camasta similarly has not alleged and cannot show actual pecuniary loss. Camasta has alleged that, but for the misrepresentation of the alleged savings, he "would not have been induced to purchase [the steaks], could have purchased [them] for less than the amount paid, or could have gone to another retail store for a true 'sale' price of a comparable item." Compl. ¶ 32. As the court found in *Kim*, the allegation that the price comparison induced Camasta to purchase the steaks is not sufficient to allege actual damages. *See Kim*, 588 F.3d at 366. Unlike *Kim*, however, Camasta has alleged that he "could have shopped around and obtained a better price in the marketplace." *Id.* at 365; *cf. Mulligan*, 888 N.E.2d at 1194 (on summary judgment, finding no actual damages where the plaintiff's own evidence showed that QVC's actual prices were lower than the marketplace); *DOD Techs.* v. *Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 10, 381 Ill. App. 3d 1042, 320 Ill. Dec. 221 (2008) (finding no actual damages where plaintiff did not allege "that it would have bargained for better insurance prices" if it had known of undisclosed commission costs). He also alleges that

20

defendants caused the putative class to pay "too much for the items purchased."[6]  Compl. ¶ 33.

Aside from being speculative, these allegations do not suggest that Camasta was denied the

benefit of the bargain for there is no suggestion that Camasta paid more than the actual value of

the steaks.  *Jos. A. Bank Clothiers, Inc.*, 2013 WL 474509, at *5.  Without allegations to suggest

that the steaks he bought were worth less than he paid, Camasta is left only with allegations that

suggest he was harmed because he did not receive as much of a discount as expected.  These

defeated expectations do not constitute actual harm under ICFA.  *Id.*; *see also Camasta* v. *Jos. A.*

*Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 3866507, at *4–5 (N.D. Ill. July 25, 2013).  Thus,

Camasta's ICFA claim will be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, OSI, Inc's motion to dismiss for lack of personal jurisdiction

[#6] is denied without prejudice.  Defendants' motion to dismiss [#9] is granted in part and

denied in part.  Count I is dismissed without prejudice.  Camasta is given until September 16,

2013 to file an amended complaint.

Dated: August 21, 2013                                      ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[6] Camasta does not allege that he himself paid too much for the steaks but rather that the class paid too much.  This is likely a scrivener's error in failing to include the word "plaintiff" in that allegation as well.  Thus, drawing all reasonable inferences in Camasta's favor, the court will include Camasta in the allegation.